No. 21-1047

# *In the United States Court of Appeals for the Third Circuit*

**RONALD E. GILLETTE,**
Appellant/Petitioner,

v.

**WARDEN GOLDEN GROVE ADULT CORRECTIONAL FACILITY,**
Appellee/Respondent.

**ON APPEAL FROM THE DISTRICT COURT OF THE VIRGIN ISLANDS DIVISION OF ST. CROIX**
No. 1:17-cv-00042
**Hon. Wilma A. Lewis, District Judge, Presiding**

_____

**APPELLANT'S PETITION FOR REHEARING *EN BANC***
_____

| | |
|---|---|
| DiRuzzo & Company | Joseph A. DiRuzzo, III |
| 401 East Las Olas Blvd., Suite 1400 | jd@diruzzolaw.com |
| Fort Lauderdale, FL 33301 | Daniel M. Lader |
| 954.615.1676 (Office) | dl@diruzzolaw.com |
| 957.827.0340 (Fax) | |

*Counsel for the Appellant, Ronald E. Gillette*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

RULE 35(b) STATEMENT .......................................................................................... 1

STATEMENT OF THE ISSUE .................................................................................... 1

STATEMENT OF THE CASE ..................................................................................... 2

REASONS FOR GRANTING THE PETITION ....................................................... 2

    I.   THE DECISION CONFLICTS WITH LONGSTANDING, RECENTLY REAFFIRMED, AND CLARIFIED SUPREME COURT PRECEDENT. ...................................................... 2

    II.  THE PANEL'S DECISION EXPLICITLY AND ERRONEOUSLY CONFLICTS WITH PRECEDENT OF AT LEAST FIVE CIRCUIT COURTS, EACH DECISION OF WHICH WAS SOUNDLY REASONED AND UPHOLDS SUPREME COURT PRECEDENT. ...... 10

CONCLUSION ............................................................................................................ 15

CERTIFICATE OF COMPLIANCE ......................................................................... 16

CERTIFICATE OF COMPLIANCE RE: E-BRIEF ................................................. 16

CERTIFICATE OF COMPLIANCE RE: VIRUS CHECK .................................... 17

CERTIFICATE OF SERVICE .................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*BedRoc Ltd., LLC v. United States*, 541 U.S. 176 (2004) .................................................. 8

*Boechler, P.C. v. Comm'r of Internal Revenue*, 142 S. Ct. 1493 (2022) .................... passim

*Calhoun v. Murray*, 507 F. App'x 251 (3d Cir. 2012) ................................................... 15

*Culp v. Comm'r of Internal Revenue*, __ F. 4th __, 2023 WL 4612024 (3d Cir. July 19, 2023) ................................................................................................................ 9, 10

*Foval v. First Nat'l Bank of Commerce in New Orleans*, 841 F.2d 126 (5th Cir. 1988) .... ................................................................................................................................. 1, 14

*Gillette v. Warden Golden Grove Adult Corr. Facility*, __ F.4th __, 2023 WL 4673744 (3d Cir. July 21, 2023) .................................................................................... passim

*Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699 (1972) ................................ 1, 5, 13, 15

*Iselin v. United States*, 270 U.S. 245 (1926) ...................................................................... 8

*Minnesota v. United States*, 305 U.S. 382 (1939) ........................................................... 11

*Morda v. Klein*, 865 F.2d 782 (6th Cir. 1989) ........................................................... 1, 13

*Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486 (2022) ....................................................... 8

*Rodas v. Seidlin*, 656 F.3d 610 (7th Cir. 2011) ...................................................... passim

*Sorosky v. Burroughs Corp.*, 826 F.2d 794 (9th Cir. 1987) .................................. 1, 6, 14

*State of N.D. v. Fredericks*, 940 F.2d 333 (8th Cir. 1991) .............................. 1, 4, 12, 13

**Statutes**

26 U.S.C. § 6330(d)(1) ....................................................................................................... 6

28 U.S.C. § 1442(a)(1) ....................................................................................................... 4

**Rules**

Fed. R. App. P. 35(a)(1) and (b)(1)(A) .............................................................................. 1

Fed. R. App. P. 35(a)(2) and (b)(1)(B) .............................................................................. 1

# RULE 35(b) STATEMENT

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to decisions of the Supreme Court of the United States, to wit: *Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699 (1972) and *Boechler, P.C. v. Comm'r of Internal Revenue*, 142 S. Ct. 1493 (2022), Consideration by the full court is therefore necessary to secure and maintain uniformity of this Court's decisions. Fed. R. App. P. 35(a)(1) and (b)(1)(A).

Additionally, this appeal involves a question of exceptional importance, as the Panel's decision conflicts with precedential decisions of at least five sister circuits considering the precise issue, to wit: *Rodas v. Seidlin*, 656 F.3d 610 (7th Cir. 2011); *State of N.D. v. Fredericks*, 940 F.2d 333 (8th Cir. 1991); *Morda v. Klein*, 865 F.2d 782 (6th Cir. 1989); *Foval v. First Nat'l Bank of Commerce in New Orleans*, 841 F.2d 126 (5th Cir. 1988); and *Sorosky v. Burroughs Corp.*, 826 F.2d 794 (9th Cir. 1987), Fed. R. App. P. 35(a)(2) and (b)(1)(B).

# STATEMENT OF THE ISSUE

Whether the doctrine of derivative jurisdiction is strictly grounded in subject matter jurisdiction and, therefore, is nonwaivable, nonforfeitable, and operates as an absolute bar to a federal court's exercise of jurisdiction.

## STATEMENT OF THE CASE

Following prosecution by the U.S. Attorney's Office ("USAO") for the District of the Virgin Islands, Appellant petitioned for habeas corpus in the Superior Court and moved for issuance of a subpoena *duces tecum* on the USAO, which was granted. In response, the USAO removed the case for purposes of the subpoena to the District Court and argued that the DOJ's *Touhy* regulations applied. The District Court agreed and quashed the Superior Court subpoena. Docs. #44 & #45; JA-002 & JA-004.

On appeal, this Court did not reach that issue; instead, adopting the Government's argument – made for the first time on appeal – that the doctrine of derivative jurisdiction barred the federal courts from hearing the case based on subject matter jurisdiction. *Gillette v. Warden Golden Grove Adult Corr. Facility*, __ F.4th __, 2023 WL 4673744 (3d Cir. July 21, 2023).

## REASONS FOR GRANTING THE PETITION

### I. THE DECISION CONFLICTS WITH LONGSTANDING, RECENTLY REAFFIRMED, AND CLARIFIED SUPREME COURT PRECEDENT.

"Jurisdictional requirements mark the bounds of a court's adjudicatory authority." *Boechler*, 142 S. Ct. at 1497 (cleaned up). A lack of a true jurisdictional requirement renders a court powerless to adjudicate a claim; but

> not all procedural requirements fit that bill. Many simply instruct parties to take certain procedural steps at certain specified times without conditioning a court's authority to hear the case on compliance with

those steps. These nonjurisdictional rules promote the orderly progress of litigation but do not bear on a court's power.

*Id.* (cleaned up).

Resultingly, "[t]he distinction matters. Jurisdictional requirements cannot be waived or forfeited, must be raised by courts *sua sponte*, and... do not allow for equitable exceptions." *Id.* (cleaned up). The Supreme Court, increasingly "[m]indful of these consequences, [has] endeavored to bring some discipline to use of the jurisdictional label." *Id.* (cleaned up).

Discipline is necessary, as

[t]he Supreme Court has long warned, even as it confesses occasional complicity, that courts are too quick to affix the "jurisdiction" label.... Jurisdiction is a word of many, too many, meanings. And not all mandatory prescriptions, however emphatic, are properly typed jurisdictional. Rather, subject-matter jurisdiction properly comprehended refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived.

*Rodas*, 656 F.3d at 622 (cleaned up).

The High Court explained: "To that end, we treat a procedural requirement as jurisdictional only if Congress clearly states that it is. Congress need not incant magic words, but the traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences[.]" *Boechler*, 142 S. Ct. at 1497 (cleaned up). Any attempt to reconcile the Panel's opinion with *Boechler* "runs into a major difficulty. The doctrine of derivative jurisdiction, never based on

anything explicit in the removal statutes, but rather a judicial gloss upon them," *Fredericks*, 940 F.2d at 336, simply cannot satisfy the standard.

Here, the USAO "removed the proceedings to the District Court pursuant to 28 U.S.C. § 1442(a)(1)." *Gillette*, 2023 WL 4673744, at *1.

28 U.S.C. § 1442(a)(1) provides in full:

A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

The removal statute makes no mention of State (or Territorial) court jurisdiction, nor does *any* jurisdictional hook supplant or add requirements for a federal district court's subject-matter jurisdiction. Indeed, there is no question the District Court had independent subject-matter jurisdiction over the subpoena and *Touhy* regulation issues: "As a sovereign, the United States is immune from suit unless it consents to be sued. For example, under § 702 of title 5 of the U.S. Code, the United States has waived sovereign immunity in non-monetary actions 'in a court of the United States.'" *Gillette*, 2023 WL 4673744, at *3 (cleaned up).

4

Thus, the proper issue in the District Court was whether there was a defect in removal, i.e., a nonjurisdictional claims-processing rule, subject to waiver or forfeiture. *Boechler*, 142 S. Ct. at 1497. The Government never raised that below, yet, the Panel focused on whether the Superior Court properly had jurisdiction that transferred to the District Court on removal.

> Longstanding decisions of [the Supreme] Court make clear, however, that where after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court.

*Grubbs*, 405 U.S. at 702.

That precisely occurred below: the District Court ruled on the merits holding the *Touhy* regulations precluded Appellant's requested relief. Thus, the Panel's decision runs afoul of *Grubbs*. The Ninth Circuit applied *Grubbs* when considering removal under 28 U.S.C. § 1441 *prior* to the statutory elimination of any derivative jurisdiction effects in that section (thus, on equal footing with this case):

> Because ERISA has preempted the state claims and jurisdiction is exclusive in the federal court, 29 U.S.C. § 1132(e)(1), under the doctrine of derivative jurisdiction, the district court could not exercise removal jurisdiction. As this action was filed prior to the effective date of the Judicial Improvements Act of 1985, 28 U.S.C. § 1441(e), which eliminates the derivative jurisdiction roadblock, removal was impossible. The district court discussed this issue. But here, we are not analyzing whether removal was proper or possible. The single question before us is

whether the action could have been initially filed in the federal district court. *See Grubbs,* 405 U.S. at 702[.]

*Sorosky*, 826 F.2d at 801 (cleaned up).

Forsooth, the propriety of that result was crystallized in subsequent Supreme Court decisions, culminating in *Boechler*'s unequivocal requirement that "statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences[.]" 142 S. Ct. at 1497 (cleaned up). Section 1442 provides no suggestion, let alone a clear statement, *id.* that a lack of jurisdiction in Superior Court precluded independent jurisdiction in District Court.

While here, the statutory text provides *no* reasonable basis to treat the removal defect as jurisdictional, even in close calls the presumption is a rule is not jurisdictional, only overcome by clear statutory text to the contrary. *Boechler* concerned 26 U.S.C. § 6330(d)(1): "The person may, within 30 days of a determination under this section, petition the Tax Court for review of such determination (and the Tax Court shall have jurisdiction with respect to such matter)."

The High Court explained the issue:

The only jurisdictional language appears in the parenthetical at the end of the sentence. All agree that the parenthetical grants the Tax Court jurisdiction over petitions for review of collection due process determinations. And all agree that the provision imposes a 30-day deadline to file those petitions. The question is whether the provision limits the Tax Court's jurisdiction to petitions filed within that timeframe.

6

> The answer depends on the meaning of "such matter," ... Boechler contends that it refers only to the immediately preceding phrase... [t]he Commissioner, [contends it] refers to the entire first clause[.]

*Boechler*, 142 S. Ct. at 1497-98.

The High Court concluded, even

> [t]he Commissioner's counterarguments fall short. To begin with, the Commissioner repeats his refrain that "such matter" refers to the entire first clause of the sentence, thereby conditioning the Tax Court's jurisdiction on the deadline. We agree that this is a plausible interpretation of the statute. Some might even think it better than Boechler's. *But in this context, better is not enough. To satisfy the clear-statement rule, the jurisdictional condition must be just that: clear.*

*Id.* at 1499 (emphasis added).

The statutory language here is a far cry from having multiple "plausible interpretation[s] of the statute[, in which s]ome might even think [the jurisdictional reading] better[.]" *Id.* In stark contrast, the Panel did not – because it *could not* – link jurisdiction to *any statutory language*; rather, it applied the doctrine that, "[w]hen a case is removed to federal court under § 1442(a)(1), the District Court derives its subject-matter jurisdiction from the court from which the case was removed." *Gillette*, 2023 WL 4673744, at *2. The Panel sought to follow this Court's precedents, *see id* at *2 n. 9, without basis in the statutory text itself.

But the Supreme Court made plain, even *with* textual basis, courts may not hold a rule jurisdictional unless it Congress *clearly* intended – even for a jurisdictional

7

grant in the same sentence as the applicable rule: "that the jurisdictional grant and filing deadline appear in the same provision, even the same sentence… does not render the Commissioner's reading clear either…. [T]he important feature is the one that is missing here: a clear tie between the deadline and the jurisdictional grant." *Boechler*, 142 S. Ct. at 1499 (cleaned up).

Statutory text controls: "[t]he preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (cleaned up). Even with a compelling reason to apply the doctrine of derivative jurisdiction as jurisdictional (though there is not), without the clear statement required, such treatment violates what the Supreme "Court has repeatedly stated, the text of a law controls over purported legislative intentions unmoored from any statutory text. The Court may not replace the actual text with speculation as to Congress' intent." *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2496 (2022) (cleaned up). And "[t]o supply omissions transcends the judicial function[,]" *Iselin v. United States*, 270 U.S. 245, 251 (1926), especially because the "statute was evidently drawn with care. Its language is plain and unambiguous. What the government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope." *Id.* at 250–51.

Because the statutory text lacks a clear statement of jurisdictional intent, imposing it here violates *Boechler*, as the High Court explained:

> The [Government's authorities] almost all predate this Court's effort to "bring some discipline" to the use of the term "jurisdictional." And while this Court has been willing to treat a long line of Supreme Court decisions left undisturbed by Congress as a clear indication that a requirement is jurisdictional, no such long line of authority exists here.

142 S. Ct. at 1500 (cleaned up).

Two days before the Panel's opinion, this Court followed suit, applying *Boechler*:

> Because an unfulfilled jurisdictional requirement carries harsh consequences, courts do not apply the "jurisdictional" label casually. To determine whether a statutory deadline is jurisdictional or claims-processing in nature, we examine the text, context, and relevant historical treatment of the provision, and will treat a procedural requirement as jurisdictional only if Congress clearly states that it is.

*Culp v. Comm'r of Internal Revenue*, __ F. 4th __, 2023 WL 4612024, at *3 (3d Cir. July 19, 2023) (cleaned up).

In *Boechler*, "[t]he Supreme Court held the deadline is not jurisdictional. In its view, the plausible interpretations of the statute—one supporting a jurisdictional reading and one weighing against it—suggest the text does not clearly mandate the jurisdictional reading." *Id.* (cleaned up). Accordingly, this Court concluded that the timeliness of a petition for redetermination of tax was not jurisdictional: "Congress knew how to limit the scope of the Tax Court's jurisdiction. It expressly constrained the Tax Court from issuing injunctions or ordering refunds when a petition is

9

untimely. But it did not similarly limit the Tax Court's power to review untimely redetermination petitions." *Id.* at *4. The Panel failed to apply the Supreme Court's required "discipline" under *Boechler* by declining to deem a requirement jurisdictional if the statutory "text does not clearly mandate the jurisdictional reading." *Id.* at *3.

No statutory language persuasive of jurisdictional treatment exists here – let alone a clear statement mandating such a reading; this Court must grant rehearing and vacate the Panel's decision to conform this important issue of law with Supreme Court precedent and this Court's decision in *Culp*.

II. THE PANEL'S DECISION EXPLICITLY AND ERRONEOUSLY CONFLICTS WITH PRECEDENT OF AT LEAST FIVE CIRCUIT COURTS, EACH DECISION OF WHICH WAS SOUNDLY REASONED AND UPHOLDS SUPREME COURT PRECEDENT.

The Panel's holding explicitly conflicts with "decisions made by our sister circuits holding that questions of 'derivative jurisdiction' may be waived or forfeited." *Gillette*, 2023 WL 4673744, at *2 (footnote omitted). The Panel acknowledged, Fifth, Sixth, Seventh, Eight, and Ninth Circuit precedents hold derivative jurisdiction is nonjurisdictional *Id.* at *2 n. 10.

Because each of those decisions were soundly reasoned and uphold Supreme Court precedent, this Court should grant rehearing to conform its precedent.

In *Rodas*, the Seventh Circuit explained:

When a case is removed from state to federal court, the jurisdiction of the latter is said "in a limited sense" to derive from the former.... More

than one commentator has observed that the justification for the rule is hardly obvious, but that makes it no less entrenched—or binding on us.

656 F.3d 610, 615-16 (cleaned up, quoting *Minnesota v. United States,* 305 U.S. 382, 389 (1939)).

Expounding on the statement in *Minnesota* that the jurisdiction is derivative "in a limited sense," *Rodas* proceeded to discuss *Grubbs*:

> The United States removed the case to federal district court, relying on 28 U.S.C. § 1444.... All parties litigated the case as if jurisdiction in the district court were proper, and the case proceeded to a bench trial....
>
> On appeal, the Fifth Circuit held that the priority of the United States' judgment lien against Grubbs provided a "spurious" basis for removal under 28 U.S.C. § 1444. Because removal had not been authorized, the Fifth Circuit concluded that there was no other basis for the district court's jurisdiction over the action and the cause had to be remanded to state court. The Supreme Court reversed.... [holding] where after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court.

*Id.* at 619-20 (cleaned up).

Thus, the question at issue was precisely what it is here:

> Put simply, if the doctrine of derivative jurisdiction constitutes a mere defect in the process by which a case reaches federal court, then this court may continue to exercise jurisdiction on appeal because the district court would have had original jurisdiction. If, on the other hand, the derivative jurisdiction doctrine creates a latent and persistent defect in the subject matter jurisdiction of federal courts, then the issue can be raised at any time by any one.

11

*Id.* at 621 (footnote omitted).

*Rodas* concluded, "[a]fter examining the issue, we reject the argument that the doctrine of derivative jurisdiction constitutes an essential ingredient of federal subject matter jurisdiction over removed actions." *Id.* at 622

In *Fredericks*, the Eighth Circuit likewise confronted the "old doctrine referred to as 'derivative jurisdiction[,]'." 940 F.2d at 336. Perhaps presciently, in light of *Boechler*'s teachings, the Eighth Circuit noted, "[t]he doctrine of derivative jurisdiction, never based on anything explicit in the removal statutes, but rather a judicial gloss upon them, has now been overruled by Congress[, which] removed this 'caselaw gloss' from the law of removal." *Id.* at 336. Where a district court would have jurisdiction over an action filed directly, but none derived from a state court, "[t]he only effect … was to multiply proceedings. This kind of rigmarole is unworthy of a civilized judicial system." *Id.*

Indeed, consistent with *Boechler*'s "clear-statement rule," 142 S. Ct. at 1499, the Eighth Circuit noted "the fact that it was originally created not by Congress but by the courts[,]" *Fredericks*, 940 F.2d at 337, and removed the judge-made barrier from beyond the statutory amendment in Section 1441:

> The derivative-jurisdiction doctrine owes its origin to nothing whatever in the removal statutes themselves, but rather to the formalistic conception, entirely divorced from reality, that a case originally filed in

12

> a court without jurisdiction is doomed to be a nullity forever, even after transfer to a completely different forum....
>
> Congress has now condemned the doctrine, but its words reach only those cases where the theory's bankruptcy is most apparent. Congress has thus given us more than a hint, and we think we can apply its policy to other kinds of removal without being justly accused of unwarranted activism. *Accordingly, we hold that the doctrine of derivative jurisdiction, as applied to defeat removals, should be abandoned completely*. The doctrine is no bar to the § 1444 removal that took place in this case.

*Id.* at 338 (emphasis added).

In *Morda*, the Sixth Circuit straightforwardly applied *Grubbs*, holding the only jurisdictional issue in an "improperly removed [case] tried to judgment on the merits without objection... on appeal is ... whether the federal district court would have had original jurisdiction of the case had it been filed in that court." 865 F.2d at 784 (cleaned up, quoting *Grubbs*, 405 U.S. at 702). The Sixth Circuit explained:

> The *Grubbs* rule is eminently sensible, and conservative of judicial economy; it prevents a party who waits until after he loses in the court below to object to the jurisdictional defect from getting a second bite at the apple. Provided that the district court, as here, would have had original jurisdiction had the action been filed in the first instance in federal court and would have had jurisdiction at the time of final judgment, *it works no expansion of federal jurisdiction*.

*Id.* (emphasis added).

In *Foval*, the Fifth Circuit swiftly dispensed any derivative jurisdiction argument based on *Grubbs*:

> Foval did not object to removing this case to federal court.... This court, sitting en banc, has recently applied the *Grubbs* waiver doctrine ... [and] held that a Jones Act claim improperly removed pursuant to 28 U.S.C. § 1445(a), but subsequently dismissed by summary judgment, resulted in waiver of any derivative jurisdiction objection.

841 F.2d at 129 (quoting *Grubbs*, 405 U.S. at 702).

*Finally*, in *Sorosky*, the Ninth Circuit acknowledged: "[t]he *Grubbs* rule applies when, as in the present case, the merits are reached and determined on a motion for summary judgment." 826 F.2d at 798. Thus, concluding, "the only issue before us is whether the district court would have had jurisdiction if this case originally had been filed in that court." *Id.* at 799.

Those cases plainly illustrate the proper result here. Despite any procedural defect in removal, the District Court proceeded to a decision on the merits without any objection based on derivative jurisdiction, and the District Court "would have had jurisdiction if this case originally had been filed in that court[,]" *id.*, because "under § 702 of title 5 of the U.S. Code, the United States has waived sovereign immunity in non-monetary actions 'in a court of the United States[,]'" *Gillette*, 2023 WL 4673744, at *3 – thus, this Court properly exercises jurisdiction over the merits of Appellant's challenges to application and validity of the *Touhy* regulations.

Accordingly, the Government's derivative jurisdiction argument was waived or forfeited as it was not asserted until this Court's review. "To be sure, the argument

14

enjoys superficial appeal based on the name and language of the doctrine," *Rodas*, 656 F.3d at 622; however, binding Supreme Court precedents, upheld by a slew of sister circuit courts, mandate the conclusion that,

> Regardless of whether the District Court exercised proper removal jurisdiction of [Appellant's] claims ..., the doctrine of derivative jurisdiction does not deprive this Court of jurisdiction on appeal.... [And] challenges based on procedural defects in removal cannot be raised for the first time on appeal.
>
> [This Court's] jurisdiction [here] is governed by *Grubbs* because the doctrine of derivative jurisdiction, despite its perhaps improvident name, is best understood as a procedural bar to the exercise of federal judicial power. That is, the doctrine creates a defect in removal, but is not an essential ingredient to federal subject matter jurisdiction.

*Calhoun v. Murray*, 507 F. App'x 251, 256 (3d Cir. 2012) (cleaned up).

## CONCLUSION

This Court should hold lack of Superior Court jurisdiction was no bar to the District Court's subject-matter jurisdiction and any argument based on a procedural defect in removal was waived or forfeited because the District Court proceeded to judgment on the merits without objection. *Grubbs*, 405 U.S. at 702. Accordingly, this Court should proceed to the substantive issues of the applicability and validity (or lack thereof) of the *Touhy* regulations as applied to this case.

The Panel's decision should be vacated and this case reheard *en banc*.

Respectfully Submitted,

| | |
|---|---|
| /s/ Joseph A. DiRuzzo, III | /s/ Daniel M. Lader |
| Joseph A. DiRuzzo, III | Daniel M. Lader |
| Florida Bar No. 0619175 | Florida Bar No. 1004963 |
| DiRuzzo & Company | DiRuzzo & Company |
| 401 East Las Olas Blvd., Suite 1400 | 401 East Las Olas Blvd., Suite 1400 |
| Ft. Lauderdale, FL 33301 | Ft. Lauderdale, FL 33301 |
| 954.615.1676 (Office) | 954.615.1676 (Office) |
| 954.827.0340 (Fax) | 954.827.0340 (Fax) |
| jd@diruzzolaw.com | dl@diruzzolaw.com |

*Attorneys for the Appellant*

Dated: August 4, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), counsel certifies that this brief is in compliance with the 3,900 typed-volume limitation of Rule 35(b)(2)(A). The instant petition is 3,733 words in length. The petition has been prepared using Microsoft Word, Goudy Old Style font in 14 point.

/s/ Joseph A. DiRuzzo, III
Joseph A. DiRuzzo, III

## CERTIFICATE OF COMPLIANCE RE: E-BRIEF

Counsel hereby certifies that the text of the E-Brief and the text of the hard-copy briefs are identical.

/s/ Joseph A. DiRuzzo, III
Joseph A. DiRuzzo, III

## CERTIFICATE OF COMPLIANCE RE: VIRUS CHECK

Counsel also certifies that he has performed a virus scan on the E-Brief using Windows Defender Antivirus software.

/s/ Joseph A. DiRuzzo, III
Joseph A. DiRuzzo, III

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2023, a true and correct copy of the foregoing was filed on ECF and a NEF will be delivery upon counsel of record:

An electronic copy to AUSAs Angela Tyson Ford, Brad Hinshelwood, and Adam Sleeper, Office of the United States Attorney, 5500 Veterans Drive, Suite 260, St. Thomas, V.I. 00802.

/s/ Joseph A. DiRuzzo, III
Joseph A. DiRuzzo, III